# 14-1661

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

ADAM STARKE,
Individually and On Behalf of All Others Similarly Situated,

Plaintiff-Appellant,

v.

GILT GROUPE, INC.,

Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF OF PLAINTIFF-APPELLANT ADAM STARKE**

Aryeh L. Pomerantz
Pomerantz & Pomerantz, PLLC
3 College Rd., Suite 102
Monsey, NY 10952
Tel. (845) 547-2600
Fax (845) 547-2601
aryeh@pom-law.com

James C. Shah
Shepherd, Finkelman, Miller
& Shah, LLP
35 E. State Street
Media, PA 19063
Tel. (610) 891-9880
Fax (866) 300-7367
jshah@sfmslaw.com

*Counsel for Plaintiff-Appellant*
[Additional Counsel on Signature Page]

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .............................................................. iii

STATEMENT OF JURISDICTION................................................... 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .................... 3

STATEMENT OF THE CASE........................................................... 4

STATEMENT OF THE FACTS ........................................................ 6

    A. Plaintiff's Online Purchase Of "Bamboo" Products Deceptively
       Advertised And Sold By Gilt...................................................... 6

    B. Defendant's "Evidence" Of An Arbitration Agreement ........................ 7

    C. The Sign-Up Screenshot, "Gilt Terms and Conditions," And
       "Website Terms of Use" Are Ambiguous And Removed From
       The Arbitration Clause At Issue ................................................. 7

    D. The Arbitration Clause Contains One-Sided And Burdensome
       Forum And Injunctive Relief Provisions................................. 11

STANDARD OF REVIEW ........................................................... 12

SUMMARY OF ARGUMENT ...................................................... 13

ARGUMENT ......................................................................... 16

   I.      THE DISTRICT COURT ERRED IN FINDING THAT THERE
          WAS AN AGREEMENT TO ARBITRATE................................... 16

      A. The Federal Arbitration Act Does Not Apply............................. 16

      B. There Was No Agreement To Arbitrate Between The Parties..... 17

         1.  Standard For Finding An Arbitration Agreement.................. 17

i

2.  Defendant Failed To Satisfy Its Burden Of Demonstrating The Existence Of An Arbitration Agreement. ............................... 19

3.  Plaintiff Did Not Assent To The "Gilt Terms And Conditions," The "Website Terms Of Use," Or The Arbitration Clause..... 21

    a. This Circuit Demands Clarity Of Notice Of Contractual Terms To Website Users Like Plaintiff ............................................................... 22

    b. Gilt's Notice Of Contractual Terms Is Woefully Ambiguous And Too Removed From The Arbitration Clause................................................. 26

    c. *Fteja* Is Not Applicable....................................... 28

II.   THE DISTRICT COURT ERRED IN FAILING TO FIND THAT THE ARBITRATION CLAUSE IS UNCONSCIONABLE ............ 29

A.  Standard For Determining Unconscionability ............................. 29

B.  The Arbitration Clause Is Procedurally And Substantively Unconscionable ............................................................ 30

CONCLUSION .................................................... 34

# TABLE OF AUTHORITIES

## Federal and State Cases

*2181752 Ont. Inc. v. United Nat'l Funding, LLC,*
  2009 U.S. Dist. LEXIS 42747 (S.D.N.Y. May 4, 2009) ............................... 20

*Bank v. WorldCom, Inc.,*
  2002 N.Y. Misc. LEXIS 33 (N.Y. Sup. Ct. 2002) ......................................... 32

*Bell v. Cendant Corp.,*
  293 F.3d 563 (2d Cir. 2002) ........................................................................... 19

*Bensadoun v. Jobe-Riat,*
  316 F.3d 171 (2d Cir. 2003) ........................................................................... 18

*Brower v. Gateway 2000,*
  246 A.D.2d 246 (1998) ............................................................................. 30, 32

*Brown v. St. Paul Travelers Companies, Inc.,*
  331 Fed. Appx. 68 (2d Cir. 2009) .................................................................. 12

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.,*
  58 F.3d 16 (2d Cir. 1995) ............................................................................... 12

*Deutsch v. Long Island Carpet Cleaning Co.,*
  5 Misc. 2d 684 (N.Y. Sup. Ct. 1956) ............................................................. 33

*Dwyer v. Biddle,*
  274 A.D. 903 (1948) ....................................................................................... 33

*Express Indus. and Term. Corp. v. New York State Dep. of Transp.,*
  93 N.Y. 2d 584 (1999) .................................................................................... 19

*First Options of Chicago, Inc. v. Kaplan,*
  514 U.S. 938 (1995) ........................................................................................ 18

*Fisser v. International Bank,*
  282 F.2d 231 (2d Cir. 1960) ........................................................................... 16

*Fteja v. Facebook, Inc.*,
   841 F. Supp. 2d 829 (S.D.N.Y. 2012) ..................................................... 21, 28

*Genesco, Inc. v. T. Kakiuchi & Co.*,
   815 F.2d 840 (2d Cir.1987)................................................................. 19

*Gillman v. Chase Manhattan Bank, N.A.*,
   73 N.Y.2d 1 (1988) ............................................................................ 26, 29

*Granite Rock Co. v. Internat'l Brotherhood of Teamsters*,
   130 S.Ct. 2847 (2010) ...................................................................... 16

*Green Tree Fin. Corp.-Alabama v. Randolph*,
   531 U.S. 79 (2000).............................................................................. 1

*Hines v. Overstock.com, Inc.*,
   380 Fed. Appx. 22 (2d Cir. June 3, 2010) ......................................... 17, 18, 20

*Hirsch v. Citibank, N.A.*,
   2013 U.S. App. LEXIS 21350 (2d Cir. Oct. 22, 2013) ..................... 24, 25, 26

*Interocean Shipping Co. v. National Shipping & Trading Corp.*,
   523 F.2d 527 (2d Cir.1975).............................................................. 19

*King v. Fox*,
   7 N.Y.3d 181 (2006) ........................................................................ 30

*Leasing Serv. Corp. v. Justice*,
   673 F.2d 70 (2d Cir. 1982)................................................................ 29

*Miner v. Walden*,
   101 Misc. 2d 814 (1979) ................................................................... 33

*Naval v. HIP Network Servs. IPA, Inc.*,
   620 F. Supp. 2d 566 (S.D.N.Y. 2009) .............................................. 29

*Ng v. HSBC Mortg. Corp.*,
   2011 U.S. Dist. LEXIS 88549 (E.D.N.Y. Aug. 10, 2011) ............... 29

*Nguyen v. Barnes & Noble Inc.*,
  2014 U.S. App. LEXIS 15868 (9th Cir. Aug. 18, 2014) ......................... 25, 26

*Oppenheimer & Co., Inc. v. Neidhardt*,
  56 F.3d 352 (2d Cir. 1995)................................................................ 18, 20

*Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*,
  636 F.2d 51 (3d Cir. 1980)...................................................................... 18

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*,
  991 F.2d 42 (2d Cir. 1993)...................................................................... 18

*Rothstein v. Fung*,
  2004 WL 1151568 (S.D.N.Y. May 24, 2004) .......................................... 17

*Sablosky v. Edward S. Gordon Co.*,
  73 N.Y.2d 133 (1989) ............................................................................. 33

*Shann v. Dunk*,
  84 F.3d 73 (2d Cir. 1996)........................................................................ 12

*Shaw Group Inc. v. Triplefine Intern. Corp.*,
  322 F.3d 115 (2d Cir. 2003).................................................................... 16

*Specht v. Netscape Communications Corp.*,
  306 F.3d 17 (2d Cir. 2002)............................................................... *passim*

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*,
  241 F.3d 135 (2d Cir. 2001).................................................................... 19

## Statutes

9 U.S.C. § 1, et seq.................................................................................. 16

9 U.S.C. § 4................................................................................... 16, 18

9 U.S.C. § 16(a)(3).................................................................................... 1

28 U.S.C. § 1332(d) .................................................................................. 1

28 U.S.C. § 1367 ................................................................................ 1

**Rules**

Fed. R. App. P. 4(a)(1) .................................................................... 1

**Other Authorities**

Restatement Second of Contracts § 208 ......................................... 29

## STATEMENT OF JURISDICTION

The United States District Court for the Southern District of New York (the "District Court") has subject matter jurisdiction over the putative class action of Plaintiff-Appellant, Adam Starke ("Plaintiff" or "Starke"), pursuant to 28 U.S.C. § 1332(d), because the amount in controversy in this putative class action exceeds $5 million, exclusive of costs and interest, and at least one member of each putative class is a citizen of a state different from Defendant-Appellant, Gilt Groupe, Inc. ("Defendant" or "Gilt").  The District Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

Plaintiff appeals from an interlocutory order granting Defendant's Motion to Dismiss ("Motion" or "Motion to Dismiss") and dismissing all of Plaintiff's claims in favor of arbitration.  This Court has jurisdiction over this appeal pursuant to Section 16 of the Federal Arbitration Act because this is an appeal from "a final decision with respect to an arbitration that is subject to this title."  9 U.S.C. § 16(a)(3).  *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 89 (2000) ("We therefore conclude that where, as here, the District Court has ordered the parties to proceed to arbitration, and dismissed all the claims before it, that decision is 'final' within the meaning of § 16(a)(3), and therefore appealable.").

Plaintiff's appeal was timely pursuant to Fed. R. App. P. 4(a)(1).  The

District Court's Order granting Defendant's Motion to Dismiss was entered on

April 24, 2014, and judgment was subsequently entered on April 30, 2014.

Plaintiff filed his Notice of Appeal on May 15, 2014.

## **STATEMENT OF THE ISSUES PRESENTED FOR REVIEW**

(A)  Absent evidence that Plaintiff was aware of, let alone assented to, the terms and conditions of a purported contract with Defendant, did the District Court err in concluding that there was a contract formed between them?

(B)  Absent evidence that Plaintiff was aware of, let alone assented to, an arbitration provision proffered by Defendant, did the District Court err in concluding that Plaintiff was bound by the arbitration provision?

(C)  In light of the one-sided and onerous provisions of the arbitration provision, did the District Court err in concluding that the arbitration provision was not unconscionable?

## STATEMENT OF THE CASE

This action was commenced on August 6, 2013, when Plaintiff filed his Class Action Complaint (the "Complaint") in the Southern District of New York, where it was assigned to the Honorable Louis L. Stanton.  (Appendix ("App.") 1-2.)

The Complaint seeks to remedy Gilt's unfair, deceptive, and unlawful business practice of advertising, marketing, and selling textile products that are not directly woven from bamboo fibers, as "bamboo" ("Product(s)").  Plaintiff alleges that Gilt has engaged in this misconduct even though such deceptive practices have been the subject of extensive Federal Trade Commission ("FTC") guidance, regulation, warnings and litigation since 2009.  Plaintiff further alleges that Gilt's misrepresentations and omissions regarding its Products, including the Product purchased by Plaintiff, created the false impression among consumers that the "bamboo" Products it sells are, indeed, bamboo and thus possess the "superior qualities inherent in Bamboo."  Upon purchasing swaddling blankets from Gilt's website, which were falsely advertised as "bamboo" by Gilt, and discovering that, in fact, the blankets were not bamboo, Plaintiff commenced this class action suit alleging that Gilt had committed, and continues to commit, violations of law giving rise to both contract and tort claims for damages, injunctive relief, as well as unjust

4

enrichment.

On March 19, 2014, Gilt filed its Motion to Dismiss arguing, *inter alia*, that Plaintiff's purchase was the subject of an arbitration clause contained in Gilt's "Website Terms of Use" and, as a result, any dispute between the parties should be resolved in an arbitration proceeding.  (App. 3-4.)   On March 20, 2014, Plaintiff filed his Opposition to the Motion, demonstrating that he never entered into an arbitration agreement with Gilt, nor manifested any assent to such agreement. (App. 4.)  He also demonstrated that the arbitration clause is unconscionable under applicable New York law.

On April 24, 2014, the District Court granted Defendant's Motion by Memorandum and Order (the "Ruling") (App. 6-13.)  The District Court held that Plaintiff assented to the arbitration clause in Gilt's "Website Terms of Use" and, as a matter of law, entered into an arbitration agreement with Gilt.  (*Id*. at 1-2) (App. 6-7.)  The District Court further held that the arbitration clause was not unconscionable.  (*Id*. at 7-8) (App. 12-13.)  Accordingly, on April 30, 2014, the District Court entered judgment dismissing the Complaint in favor of arbitration. (App. 14.)

Plaintiff timely filed his Notice of Appeal from the District Court's Ruling on May 15, 2014.  (App. 4, 15-23.)

# STATEMENT OF FACTS

### A.    Plaintiff's Online Purchase Of "Bamboo" Products Deceptively Advertised And Sold By Gilt

Gilt sells designer brand products featured on its website, www.Gilt.com. (App. 28-29; ¶ 29.)  Among them are products that Gilt represents as "bamboo" or "bamboo fiber," but do not contain actual bamboo fibers directly woven into the fabric.  (App. 29-30; ¶¶ 31-38.)  Instead, they contain bamboo derivative fibers such as rayon.  (*Id*.)  Notwithstanding that this practice of misrepresenting products as "bamboo" has been the subject of extensive FTC guidance, regulation, warnings and litigation since 2009, Gilt has and continues to advertise, market, and sell its so-called "bamboo" Products on its website.  (App. 24-26, 31-33; ¶¶ 3-8, 47-52.)

On or about June 26, 2013, Plaintiff accessed Gilt's website and purchased a 3-pack of swaddling blankets misrepresented as "bamboo."  (App. 33; ¶ 53.)  Prior to purchasing the blankets, Plaintiff read and relied upon Gilt's website statements describing them as "100% Bamboo" and having attributes of bamboo, such as "softness," "breathability," "[l]ight open weave," and a "luxurious silky" feel. (App. 33; ¶ 54.)  However, after receiving and examining the blankets he purchased, Plaintiff determined that the swaddling blankets were not actually bamboo, but rather, were rayon derived from bamboo.  (App. 34; ¶ 55.)

**B.    Defendant's "Evidence" Of An Arbitration Agreement**

The June 26, 2013 transaction on Gilt's website forms the basis for

Defendant's Motion to arbitrate this case.  In support of its Motion, Defendant

attached three documents to the Declaration of Shaina Stahl, one of Defendant's

attorneys ("Attorney Declaration").  (App. 49-50.)  These documents include:

(1) a screenshot of Gilt's Sign-up webpage; (2) the "Gilt Terms and Conditions";

and (3) the "Website Terms of Use."  (App. 49, 51-68.)  The Attorney Declaration

merely attaches these documents and claims them to be "true and correct" copies.

(App. 49.)  The Attorney Declaration says nothing about the declarant's personal

knowledge of the documents, their authenticity, where they came from, who

created them, how they were used, what timeframe they covered, or whether they

appeared on Gilt's website at the time that Plaintiff made his purchase on June 26,

2013.  (App. 49-50.)

**C.    The Sign-Up Screenshot, "Gilt Terms and Conditions," And
        "Website Terms of Use" Are Ambiguous And Removed From The
        Arbitration Clause At Issue**

The arbitration clause at issue is located on Gilt's website, but is not

immediately visible on the website:  it appears only after viewing two sets of

contractual terms, navigating on three different webpages, clicking on two separate

hyperlinks, and scrolling down 16 paragraphs on the last webpage.

*First*, the Gilt Sign-up screen.  On this screenshot, a Sign-up box appears stating that the consumer will become a Gilt member and agrees to the "Terms of Membership" by entering a valid email address or signing in to Facebook:



(App. 52.)  The words "Terms of Membership" are underlined and bolded, presumably indicating that it is a hyperlink.  (*Id*.)

*Second*, the "Terms and Conditions" webpage.  The "Terms of Membership" hyperlink on the Sign-up screen, if clicked, presumably directs the

8

consumer to the second document proffered by Defendant entitled, "Gilt Terms and Conditions":[1]

## Gilt Terms and Conditions

These Terms and Conditions of Service ("Terms of Service") govern your membership on Gilt.com and its associated mobile sites (the "Gilt Sites" or the "Sites") and your purchases and use of products and services available through the Gilt Sites. The Gilt Sites are operated by Gilt Groupe Holdings, Inc. and/or its subsidiaries and affiliates (collectively, "Gilt"). Your use of the Gilt Sites and these terms are also governed by the Website Terms of Use ("Terms of Use"), which are incorporated herein by reference. www.gilt.com/company/websiteterms

(App. 54.)  Notably, the title of this screen, "Gilt Terms and Conditions," is different from the hyperlink's title, "Terms of Membership."  (*Id*.)

The "Gilt Terms and Conditions" webpage references the third of Defendant's proffered documents – the "Website Terms of Use."  (*Id*.)  The "Gilt Terms and Conditions" state that the "Website Terms of Use" are "incorporated herein by reference" and govern "[y]our use of the Gilt Sites and these terms." (*Id*.)  They further provide that "[t]hese Terms and Conditions of Service ("Terms of Service") govern your membership on Gilt.com and its associated mobile sites [ ] and your purchase and use of products and services available through the Gilt Sites."  (*Id*.)  Like the "Terms of Membership" hyperlink on the Sign-up screen, the "Gilt Terms and Conditions" are again referred to by different names – this time, "Terms and Conditions of Service" and "Terms of Service."

[1] Only the first paragraph of the "Gilt Terms and Conditions" is presented here.  A complete copy of the same is set forth in App. 54-58.

The website address, www.gilt.com/company/websiteterms, also appears on this screen, presumably indicating that it is a hyperlink to the "Website Terms of Use." (*Id*.)

***Third***, the "Website Terms of Use" webpage. When the "Website Terms of Use" hyperlink is clicked, the consumer is then presumably directed to the third of Defendant's proffered documents entitled, "Website Terms of Use." (App. 60-68.) The disputed arbitration clause does not appear until the consumer arrives at page eight, paragraph 16 of the "Website Terms of Use":[2]

> 16. General
>
> * * *
>
> If a dispute arises under these Terms of Use or the Terms of Service between you and Gilt, such dispute shall be resolved, at the filing party's election, in either a small claims court or by final and binding arbitration administered by the National Arbitration Forum or the American Arbitration Association, under their rules for consumer arbitrations. The venue for all disputes arising under these Terms of Use shall be New York, the State of New York. All disputes in arbitration will be handled solely between the named parties, and not on any representative or class basis. ACCORDINGLY, YOU ACKNOWLEDGE THAT YOU MAY NOT HAVE ACCESS TO A COURT (OTHER THAN A SMALL CLAIMS COURT) OR TO A JURY TRIAL. Notwithstanding any other provision of these Terms of

---

[2] A complete copy of the "Website Terms of Use" is set forth in App. 60-68.

> Use or the Terms of Service, Gilt Groupe may resort to
> court action for injunctive relief at any time.

* * *

(App. 67)  Once at paragraph 16, the consumer must then scroll down three more

sub-paragraphs to see the arbitration clause.  (*Id*.)

### D.    The Arbitration Clause Contains One-Sided And Burdensome Forum And Injunctive Relief Provisions

Gilt's arbitration clause provides that "[t]he venue for all disputes arising

under these Terms of Use shall be New York, the State of New York."  (App. 67.)

Moreover, while the arbitration clause gives Gilt the right to seek injunctive relief

in court, it expressly denies Plaintiff "access to a court (other than a small claims

court) or to a jury trial" for any reason, including to seek injunctive relief.  (*Id*.)

11

## **STANDARD OF REVIEW**

The District Court's grant of a motion to compel arbitration is subject to *de novo* review.  *See Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995); *Brown v. St. Paul Travelers Companies, Inc.*, 331 Fed. Appx. 68, 69 (2d Cir. 2009) (unpublished) ("We review a district court's order granting a motion to compel arbitration de novo").  "The determination of whether parties have contractually bound themselves to arbitrate a dispute [is] a determination involving interpretation of state law [and, hence] a legal conclusion also subject to *de novo* review." *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 26 (2d Cir. 2002); *accord Shann v. Dunk*, 84 F.3d 73, 77 (2d Cir. 1996).  "A motion to compel arbitration must be dismissed and a trial held '[i]f there is an issue of fact as to the making of the agreement for arbitration.'"  *Brown*, 331 Fed. Appx. at 69 (2d Cir. 2009).

## SUMMARY OF ARGUMENT

The District Court erred in granting Defendant's Motion to Dismiss for three independent reasons.

***First***, Defendant presented no evidence that Plaintiff assented to the arbitration clause. An agreement to arbitrate, like any contract, requires mutual assent. A finding of mutual assent, however, cannot lie where Gilt's only "evidence" of assent are three extraneous documents – a screenshot of its Sign-up webpage, the "Gilt Terms and Conditions" webpage, and the "Website Terms of Use" webpage – all of which are ambiguous, unauthenticated, and lack personal knowledge. Simply put, the District Court had no factual basis for concluding that Plaintiff assented to the arbitration clause and, therefore, that an arbitration agreement existed between Defendant and Plaintiff.

***Second***, even if the District Court properly considered the proffered documents, this Circuit has refused to enforce arbitration clauses under the circumstances presented in this case. Significantly, while Defendant seeks to bind Plaintiff to the arbitration clause contained in the "Website Terms of Use," these terms never appeared by name on the Sign-up screen and, thus, Plaintiff could not have been on notice of them.

Moreover, the only terms appearing on the Sign-up screen were the "Terms

13

of Membership," an entirely different set of contractual terms.  Although the "Terms of Membership" refer and purport to incorporate the "Website Terms of Use," Defendant ambiguously and confusingly named the "Terms of Membership," referring to them by multiple different names – "Gilt Terms and Conditions," "Terms and Conditions of Service," and "Terms of Service." Accordingly, this attempt to put Plaintiff on notice of the "Website Terms of Use" also fails.

To make matters worse, the "Website Terms of Use" are too far removed from the Sign-up screen to properly notify Plaintiff of them.  They are located two hyperlinks and two webpages away from the Sign-up screen, and once at the "Website Terms of Use," one must still scroll down eight pages (or 16 paragraphs and three sub-paragraphs) to get to the arbitration clause.

Under these circumstances, Plaintiff cannot be deemed to have known of, much less assented to, the "Gilt Terms and Conditions," the "Website Terms of Use," or the arbitration clause buried in the latter.

***Third***, the District Court erred in concluding that the arbitration clause was not unconscionable.  It is the direct result of a sign-up process that deprived Plaintiff of any meaningful choice to enter (or not enter) into the arbitration agreement, and it contains forum selection and injunctive relief provisions that are

14

plainly one-sided in Gilt's favor and unduly onerous.

For the foregoing reasons, the District Court's Ruling granting Defendant's Motion and dismissing Plaintiff's claims in favor of arbitration should be reversed.

## ARGUMENT

## I.   THE DISTRICT COURT ERRED IN FINDING THAT THERE WAS AN AGREEMENT TO ARBITRATE

### A.   The Federal Arbitration Act Does Not Apply

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, expressly provides that a "written provision" to arbitrate is an indispensable prerequisite to the statute's application. *See Fisser v. International Bank*, 282 F.2d 231, 233 (2d Cir. 1960) (describing "written provision" requirement as the "*sine qua non* of an enforceable arbitration agreement"); 9 U.S.C. § 4 (providing that "[i]f the making of the arbitration agreement . . . [is] in issue, the court shall proceed summarily to the trial thereof," and the issue for the finder of fact at such a trial is whether there exists an "agreement in writing for arbitration. . . ."). Thus, requiring parties to arbitrate their claims is wholly improper absent an express, written agreement to arbitrate. *See Granite Rock Co. v. Internat'l Brotherhood of Teamsters*, 130 S.Ct. 2847, 2856 (2010) ("[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*.") (citations omitted) (emphasis in original); *Shaw Group Inc. v. Triplefine Intern. Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) ("[P]arties cannot be compelled to arbitrate issues that they have not specifically agreed to submit to arbitration.")

16

(citation omitted).

Here, the District Court improperly made the threshold determination that since "[i]t is clear that Starke assented to the arbitration clause in Gilt's Website Terms of Use, Starke's individual claims are subject to that clause (which also precludes any class action claims), and therefore the complaint should be dismissed." (Ruling at 1-2) (App. 6-7.) For the reasons set forth below, Plaintiff did not, and could not have, assented to the arbitration clause and, therefore, no agreement to arbitrate exists. Accordingly, the FAA does not apply to this case and the District Court's dismissal of Plaintiff's claims in favor of arbitration was improper.

## B. There Was No Agreement To Arbitrate Between The Parties

### 1. Standard For Finding An Arbitration Agreement.

Defendant, not Plaintiff, has the burden of making a "*prima facie* initial showing that an agreement to arbitrate existed." *Hines v. Overstock.com, Inc*., 380 Fed. Appx. 22, 2010 WL 2203030, at *1 (2d Cir. June 3, 2010) (unpublished); *Rothstein v. Fung*, No. 03 Civ. 0674, 2004 WL 1151568, at *1 (S.D.N.Y. May 24, 2004) ("As the moving party, defendants bear the burden of proving written agreements obligating both plaintiffs to arbitrate."). Such an initial showing is required to shift the burden "to the party opposing arbitration to put the making of

17

[the agreement to arbitrate] 'in issue.'" *Hines*, 2010 WL 2203030, at *1.

Like a motion for summary judgment, Defendant's Motion required that it "substantiate [its] entitlement [to arbitration] by a showing of evidentiary facts" demonstrating that Plaintiff agreed to arbitrate. *See Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995); *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuel*a, 991 F.2d 42, 46 (2d Cir. 1993) (imposing "preponderance of the evidence" burden on party seeking to show the existence of an agreement to arbitrate). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *See Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citing 9 U.S.C. § 4). Conversely, failure to present a genuine issue of fact negates the need for a trial. *See Oppenheimer & Co.*, 56 F.3d at 358; *see also Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980) ("Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement").

To determine whether an agreement to arbitrate is valid, state law contract principles apply. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (courts generally "apply ordinary state-law principles that govern the formation of contracts" in deciding "whether the parties agreed to arbitrate a

certain matter") (citations omitted); *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) ("Because an agreement to arbitrate is a creature of contract, [] the ultimate question of whether the parties agreed to arbitrate is determined by state law.").

Under New York law, a binding contract requires "a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Express Indus. and Term. Corp. v. New York State Dep. of Transp.*, 93 N.Y. 2d 584, 589 (1999). Mutual assent presents a question of fact. *See U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 241 F.3d 135, 145 (2d Cir. 2001) ("The determination of whether there was a meeting of the minds sufficient to constitute a contract is one of fact.") (citing *Interocean Shipping Co. v. National Shipping & Trading Corp.*, 523 F.2d 527, 534 (2d Cir.1975)). "This remains true [when] the contract at issue is an arbitration agreement." *U.S. Titan*, 241 F.3d at 145 (citing *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 845 (2d Cir.1987)).

### 2.     Defendant Failed To Satisfy Its Burden Of Demonstrating The Existence Of An Arbitration Agreement.

Here, the District Court failed to find, much less analyze, whether Defendant satisfied its burden of making a "*prima facie* initial showing" that Plaintiff

19

assented to the arbitration clause such that "an agreement to arbitrate existed."
*Hines*, 2010 WL 2203030, at *1. Instead, without any discussion or analysis of
Defendant's evidentiary burden, it perfunctorily adopted Defendant's only
proffered "evidence" – a screenshot of Gilt's Sign-up webpage, the "Gilt Terms
and Conditions," and the "Website Terms of Use." (Ruling at 1-3, 7) (App. 6-8,
12.) Based on no other evidence, the District Court concluded that Plaintiff
assented to the arbitration clause. (*Id*.)

These documents should not have been considered. Most problematic, they
were introduced through an Attorney Declaration that lacked averments of
personal knowledge, authenticity, and foundation, and that merely attached these
documents and claimed them to be "true and correct" copies. (App. 49-50.)
Nothing more. Remarkably, there was no evidence presented to the district court
that the arbitration clause Gilt sought to enforce appeared on the website at the
time of Plaintiff's transaction. These deficiencies are fatal, and the District Court
erred in considering and crediting the proffered documents as evidence of
Plaintiff's assent to the arbitration clause. *See Oppenheimer*, 56 F.3d at 358
(requiring "evidentiary facts" to demonstrate an agreement to arbitrate); *2181752
Ont. Inc. v. United Nat'l Funding, LLC,* Case No.1:09-cv-01018, 2009 U.S. Dist.
LEXIS 42747, at *5 (S.D.N.Y. May 4, 2009) (" . . . supporting affidavit 'must be

made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated'").

Accordingly, absent factual support of Plaintiff's assent to the arbitration clause, Defendant failed to meet its burden of showing that an agreement to arbitrate existed between Plaintiff and Defendant.

### 3.    Plaintiff Did Not Assent To The "Gilt Terms And Conditions," The "Website Terms Of Use," Or The Arbitration Clause.

Nor could Defendant make the requisite showing of a valid and enforceable arbitration agreement based upon its proffered "evidence."  The District Court erroneously found that Plaintiff "assented to the arbitration clause in Gilt's Website Terms of Use," (Ruling at 1) (App. 6), reasoning:

> When Starke clicked "Shop Now" [on the initial Sign-up screen], he was informed that by doing so, and giving his email address, "you agree to the Terms of Membership for all Gilt Groupe sites." Regardless of whether he actually read the contract's terms, Starke was directed exactly where to click in order to review those terms, and his decision to click the "Shop Now" button represents his assent to them.

(*Id.* at 7) (App. 12.)  In so doing, the District Court analogized this case to *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829 (S.D.N.Y. 2012), in which a forum selection clause was enforced against plaintiff where "he opened up an account by clicking two 'Sign Up buttons, the second of which stated 'By clicking Sign Up, you are

21

indicating that you have read and agree to the Terms of Service[,] [and] [t]he terms were visible only by clicking on a hyperlink."  (Ruling at 5-7) (App. 10-12.)  The District Court's finding of assent was error because it contravenes prevailing Second Circuit authority and ignores the ambiguous, confusing and woefully layered way in which Defendant presented its terms and conditions to its website's users, including Plaintiff.

### a.    This Circuit Demands Clarity Of Notice Of Contractual Terms To Website Users Like Plaintiff.

*Specht*, *supra*, is instructive on the issue of assent.  In *Specht*, the Second Circuit examined whether an internet user who downloaded software by clicking a button was bound by additional contractual terms where those terms were not easily identifiable.  306 F.3d at 21-26.  The Court contrasted two types of agreements – a valid clickwrap agreement presented when users attempted to download an internet browsing program called Netscape Communicator, and an invalid browsewrap agreement relating to another program called SmartDownload.  With respect to the clickwrap agreement, "when [users] proceeded to initiate installation of Communicator, they were automatically shown a scrollable text of that program's license agreement and were not permitted to complete the

22

installation until they had clicked on a 'Yes' button to indicate that they accepted all the license terms." (*Id*. at 21-22.)

In contrast, "no clickwrap presentation accompanied the [SmartDownload] operation. Instead, once [users] had clicked on the 'Download' button located at or near the bottom of their screen, and the downloading of SmartDownload was complete, [users] encountered no further information about the plug-in program or the existence of license terms governing its use. The sole reference to SmartDownload's license terms on the 'SmartDownload Communicator' webpage was located in text that would have become visible to [users] only if they had scrolled down to the next screen." (*Id*. at 23.)

Importantly, the Court continued, "Had [users] scrolled down instead of acting on defendants' invitation to click on the 'Download' button, they would have encountered the following invitation: 'Please review and agree to the terms of the Netscape SmartDownload software license agreement before downloading and using the software.'" (*Id*.) On this webpage "appeared a list of license agreements, the first of which was 'License Agreement for Netscape Navigator and Netscape Communicator Product Family (Netscape Navigator, Netscape Communicator and Netscape SmartDownload).' If the user clicked on that link, he or she would be taken to yet another webpage that contained the full text of a

23

license agreement" applicable to SmartDownload. (*Id*. at 24.) "Among the license terms was a provision requiring virtually all disputes relating to the agreement to be submitted to arbitration [ ]." (*Id*.)

The Second Circuit rejected defendant's attempt to bind plaintiffs to the arbitration clause contained in the latter browsewrap agreement, holding that "a consumer's clicking on a download button does not communicate assent to contractual terms ***if the offer did not make clear to the consumer that clicking on the download button would signify assent to those terms***." (*Id*. at 29-30) (emphasis added.) As the Court explained:

> We conclude that in circumstances such as these, where consumers are urged to download free software at the immediate click of a button, a reference to the existence of license terms on a submerged screen is not sufficient to place consumers on inquiry or constructive notice of those terms. The SmartDownload webpage screen was "printed in such a manner that it tended to conceal the fact that it was an express acceptance of [Netscape's] rules and regulations." . . . Internet users may have, as defendants put it, "as much time as they need[]" to scroll through multiple screens on a webpage, but there is no reason to assume that viewers will scroll down to subsequent screens simply because screens are there.

(*Id*. at 32.) Accordingly, the Court held that plaintiffs were not bound by the arbitration clause contained in the SmartDownload license terms. (*Id*. at 35.)

Echoing *Specht*'s demand for clarity in obtaining one's assent to contractual terms, this Court explained in *Hirsch v. Citibank, N.A.,* No. 13-1172-cv, 2013 U.S.

24

App. LEXIS 21350 (2d Cir. Oct. 22, 2013) (unpublished):

> While "[i]t is true that a party cannot avoid the terms of a contract on
> the ground that he or she failed to read it before signing[,]. . . *[a]n
> exception to this general rule exists when the writing does not
> appear to be a contract and the terms are not called to the attention
> of the recipient.  In such a case no contract is formed with respect to
> the undisclosed term*."  *Id*. at 30 (citation and internal quotation
> marks omitted).  This presents an issue of fact that has yet to be
> determined.

(*Id*. at *5) (emphasis added.)

More recently, in *Nguyen v. Barnes & Noble Inc*., No. 12-56628, 2014 U.S.
App. LEXIS 15868 (9th Cir. Aug. 18, 2014), the Ninth Circuit re-emphasized the
need for clarity.  In *Nguyen*, the Ninth Circuit refused to enforce an arbitration
clause contained in Barnes & Noble's "Terms of Use," where the "Terms of Use"
were available by clicking a "hyperlink located in the bottom left-hand corner of
every page on Barnes & Noble's website, and [in] close proximity to the buttons a
user must click on to complete an online purchase [ ]."  2014 U.S. App. LEXIS
15868, at *14-18.  Although the issue in *Nguyen* was the sufficiency of the
hyperlink's proximity or conspicuousness to constitute proper notice of terms, the
Ninth Circuit repeated *Specht* and *Hirsch*'s insistence that website owners be clear
in giving notice to users of contractual terms:

> . . .  [I]n keeping with courts' traditional reluctance to enforce
> browsewrap agreements against individual consumers, we therefore

25

hold that where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice.  While failure to read a contract before agreeing to its terms does not relieve a party of its obligations under the contract, *Gillman v. Chase Manhattan Bank*, N.A., 73 N.Y.2d 1, 11, 534 N.E.2d 824, 537 N.Y.S.2d 787 (1988), ***the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers.  Given the breadth of the range of technological savvy of online purchasers, consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound***.

(*Id*. at *17-18) (emphasis added.)

> **b.     Gilt's Notice Of Contractual Terms Is Woefully Ambiguous And Too Removed From The Arbitration Clause.**

In this case, the clarity of notice demanded by *Specht*, *Hirsch*, and *Nguyen* is manifestly lacking.  Although the Sign-up screen states that the user will become a Gilt member and agrees to be bound by the "Terms of Membership" upon entering a valid email address or signing in to Facebook, the "Terms of Membership" hyperlink on this screen takes the user to another webpage with an entirely different title – "Gilt Terms and Conditions."  (App. 52, 54.)  Moreover, once at the "Gilt Terms and Conditions" webpage, that page again misnames the "Terms of Membership" – referring to them as "Terms and Conditions of Service" and

"Terms of Service."  (App. 54.)

Worse yet, the "Gilt Terms and Conditions" do not even contain the arbitration clause at issue.  Rather, the arbitration clause is included in *a second set of contractual terms* – the "Website Terms of Use" – which the "Gilt Terms and Conditions" merely incorporate by reference.  (App. 54, 60-68.)  To view the "Website Terms of Use," the user must then click on a second hyperlink, which directs the user to yet another webpage.  (App. 54.)  Only then is the arbitration clause at issue viewable – but only after the user scrolls down eight screens and 16 paragraphs into the "Website Terms of Use."  (App. 67.)

Given these ambiguities and layers, Defendant's notice of contract terms clearly falls short of the notice required by this Circuit.  It failed to make it clear to users that, by entering their email address or signing in to Facebook on the Sign-up screen, they were assenting to the "Gilt Terms and Conditions" or to the "Website Terms of Use" (which were not even identified on the Sign-up screen).  *See Specht*, 306 F.3d at 29-30 (the offer must "make clear to the consumer that clicking on the download button would signify assent to *those terms*[]").  Under these circumstances, Plaintiff could not have assented to the arbitration clause in the "Website Terms of Use" when, to do so, he had to wade through contract terms that were not only ambiguously titled, but that appeared in two sets of contracts

27

spread out over two separate webpages from the Sign-up screen.

### c.    *Fteja* **Is Not Applicable.**

Contrary to the District Court's reasoning, this case is materially different from *Fteja*, *supra*.  (Ruling at 5-7) (App. 10-12.)  In *Fteja*, plaintiff was presented with one set of contractual terms (the "Terms of Use") during the sign-up process, the forum selection clause in dispute was contained in those "Terms of Use," and the "Terms of Use" appeared via hyperlink next to the "Sign Up" button.  841 F. Supp. 2d at 834-35.  In contrast, the sign-up process in this case involves ***two sets of contractual terms***, and the arbitration clause that Defendant seeks to enforce against Plaintiff is ***not*** contained in the "Terms of Membership" contract referred to by name and hyperlink on the Sign-up screen.  (App. 52, 54-58, 60-68.)  Rather, the arbitration clause is part of the second contract (the "Website Terms of Use"), which is viewable only after clicking two hyperlinks and navigating two webpages away from the Sign-up screen.  (*Id*.)  Thus, unlike the plaintiff in *Fteja*, Plaintiff was not "informed of the consequences of his assenting click and [ ] was [not] shown, immediately below, where to click to understand those consequences." *Fteja*, 841 F. Supp. 2d at 840.

28

## II.   THE DISTRICT COURT ERRED IN FAILING TO FIND THAT THE ARBITRATION CLAUSE IS UNCONSCIONABLE

### A.   Standard For Determining Unconscionability

The doctrine of unconscionability is routinely employed to deny enforcement of harsh and unreasonable contract terms.  *Leasing Serv. Corp. v. Justice*, 673 F.2d 70, 71 (2d Cir. 1982); *see also* Restatement Second of Contracts § 208 (noting that if a contract or term thereof is unconscionable at the time the contract is made, a court may refuse to enforce the contract, may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result).

Under New York law, a contract is deemed unconscionable if it "is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms."  *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988).  The party alleging unconscionability must generally show both substantive and procedural unconscionability.  *Naval v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009).  In other words, "[t]he contract must unreasonably favor one party over the other and the process of contract formation must have deprived the disadvantaged party of meaningful choice."  *Ng v. HSBC Mortg.*

*Corp*., 07-CV-5434 (RRM)(VVP), 2011 U.S. Dist. LEXIS 88549, at *24
(E.D.N.Y. Aug. 10, 2011); *King v. Fox*, 7 N.Y.3d 181, 191 (2006).  "As to the
procedural element, a court will look to the contract formation process to
determine if in fact, one party lacked any meaningful choice in entering into the
contract, taking into consideration such factors as the setting of the transaction, the
experience and education of the party claiming unconscionability, whether the
contract contained 'fine print,' whether the seller used high-pressured tactics' and
any disparity in the parties' bargaining power." *Brower v. Gateway 2000*, 246
A.D.2d 246, 253 (1998).  The substantive element "entails an examination of the
substance of the [a]greement in order to determine whether the terms unreasonably
favor one party."  (*Id*. at 254.)

### B.     The Arbitration Clause Is Procedurally And Substantively Unconscionable

The District Court found that the arbitration clause was not procedurally
unconscionable because "[t]here is no indication that Starke lacked a choice of
other sources to purchase the blankets."  (Ruling at 7) (App. 12.)  Moreover, it
found that the clause was not substantively unconscionable because it did not
"unduly favor Gilt," gave both parties a "simpler and less expensive" method of

resolving their dispute, and should not have surprised Plaintiff.  (*Id*. at 7-8) (App. 12-13.)  These findings are also error.

As explained above, the contract formation process was fatally unclear, ambiguous, and layered with webpages and hyperlinks, such that there can be no dispute that the process deprived Plaintiff of a meaningful choice in deciding whether or not to agree to the arbitration clause.  As a sophisticated entity whose entire business model is premised on online transactions, Defendant was in the best position to ensure that its website properly notified users of contractual terms.  (App. 28-29; ¶ 29.)  It did not.  Consequently, Plaintiff did not know about the arbitration clause and could not make an informed decision about it.  As such, the arbitration clause is procedurally unconscionable.

Further, the arbitration clause's forum selection and injunctive relief provisions overwhelmingly favor Gilt, rendering it substantively unconscionable. With respect to the forum selection clause, Gilt has unilaterally selected New York as the arbitration venue, which is especially prohibitive since Gilt is engaged in internet sales to consumers nationwide, as reflected by this case.  As New York courts have explained, such clauses effectively discourage consumers from bringing their claims:

31

> [T]he court believes that there may be something inherently wrong
> and unfair in setting the venue for an arbitration in a distant city, when
> the amount in issue is a relatively small amount. This effectively
> deprives consumers of the opportunity to have their claims heard.
> One of the bases of the *Brower* court in removing ICC as the arbitral
> body, was the undue expense of maintaining an arbitration before the
> ICC. However, requiring that the arbitration be held in a distant city
> also imposes an undue expense, and may well be used as a way to
> discourage the bringing of claims.

*Bank v. WorldCom, Inc.*, No. 122484/00, 2002 N.Y. Misc. LEXIS 33, at *10-11

(N.Y. Sup. Ct. 2002); *see also Brower*, 246 A.D.2d at 254 ("[T]he excessive cost

factor that is necessarily entailed in arbitrating before the ICC is unreasonable and

surely serves to deter the individual consumer from invoking the process. Barred

from resorting to the courts by the arbitration clause in the first instance, the

designation of a financially prohibitive forum effectively bars consumers from this

forum as well; consumers are thus left with no forum at all in which to resolve a

dispute.") (internal citations omitted). Here, consumers from all over the country

are alleged to have been deceived by Gilt's misrepresentations, such that the

concerns raised in *Bank* and *Brower* are even more prominent.

Similarly, Gilt unilaterally granted itself the right to pursue court action for

injunctive relief, while depriving Plaintiff of the same right, including the right to

seek injunctive relief that is otherwise available to consumers under New York's

consumer protection statute. Such provisions lack mutuality and are substantively

unconscionable. *See, e.g.*, *Deutsch v. Long Island Carpet Cleaning Co.*, 5 Misc. 2d 684, 685 (N.Y. Sup. Ct. 1956) (refusing to enforce arbitration agreement that required the customer's claims to be arbitrated, but permitted the company's claim for money due to be litigated in court at the company's sole option, for lack of mutuality); *Dwyer v. Biddle*, 274 A.D. 903, 904 (1948) ("There is no satisfactory showing of the existence of a reciprocally enforceable written contract of the parties containing the claimed arbitration clause."); *Miner v. Walden*, 101 Misc. 2d 814, 819-20 (1979) (rejecting as unconscionable and unilateral an agreement to arbitrate between a doctor and patient that purported to be "an exchange of promises to arbitrate with each promise serving as consideration for the other[,]" but excluded from the agreement any claims of money for services that the doctor possessed); *Sablosky v. Edward S. Gordon Co.*, 73 N.Y.2d 133, 138 (1989) ("some courts have invalidated unilateral arbitration clauses for want of mutuality although their decisions might as well rest on the doctrine of unconscionability or public policy") (citing *Deutsch*, *Dwyer*, and *Miner*).

33

## <u>CONCLUSION</u>

For the foregoing reasons, the District Court's grant of Defendant's Motion to Dismiss in favor of arbitration should be reversed.

Respectfully submitted,

/s/ James C. Shah

James C. Shah
Shepherd, Finkelman, Miller & Shah, LLP
35 E. State Street
Media, PA 19063
Tel. (610) 891-9880
Fax (866) 300-7367
jshah@sfmslaw.com

Aryeh L. Pomerantz
Pomerantz & Pomerantz, PLLC
3 College Rd.
Suite 102
Monsey, NY 10952
Tel. (845) 547-2600
Fax (845) 547-2601
aryeh@pom-law.com

Mark Schlachet
3515 Severn Road
Cleveland, Ohio 44118
Tel. (216) 896-0714
Fax (216) 514-6406
mschlachet@gmail.com

***Attorneys for Plaintiff-Appellant***

34

## <u>CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,520 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word 2013 in 14-point Times New Roman type.

/s/ James C. Shah
James C. Shah

## <u>CERTIFICATE OF SERVICE</u>

I, James C. Shah, hereby certify that this brief and accompanying appendix has been electronically filed via the Court's ECF system, which will send an electronic copy to the following ECF-registered counsel of record:

> Gregory T. Parks
> MORGAN, LEWIS & BOCKIUS LLP
> 1701 Market Street
> Philadelphia, PA 19103
> (215) 963-5000
> (212) 963-5001 (facsimile)
> gparks@morganlewis.com

I further certify that there are no non-ECF registered counsel of record for Defendant-Appellee to whom copies of this brief and accompanying appendix need to be sent via U.S. mail.

This 27th day of August, 2014.

> /s/ James C. Shah
> James C. Shah